# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH FETSURKA, et al., | : | |
| Plaintiffs | : | Case No. - 2:20-cv-05857 |
| v. | : | |
| DANIELLE OUTLAW, et al., | : | |
| Defendants | : | |

## DECLARATION OF BRANDON COMBS

I, Brandon Combs, am competent to state and declare the following based on my personal knowledge:

1. I am the President of Firearms Policy Coalition, Inc. ("FPC"), a Plaintiff in this action. I am authorized to testify on behalf of FPC as to matters set forth in this Declaration.

2. I have held the position of president of FPC since FPC was founded in 2014. As its president, I am duly authorized to act on behalf of the organization.

3. FPC is a non-profit organization incorporated under the laws of Delaware, with places of business in Pennsylvania, California, Nevada, Idaho, and other states.

4. FPC's purposes are: (A) To protect and defend the Constitution of the United States and the People's rights, privileges and immunities deeply

1

rooted in this Nation's history and tradition, especially the inalienable, fundamental, and individual right to keep and bear arms; (B) To protect, defend, and advance the means and methods by which the People of the United States may exercise those rights, including, but not limited to, the acquisition, collection, transportation, exhibition, carry, care, use, and disposition of arms for all lawful purposes, including, but not limited to, self-defense, hunting, and service in the appropriate militia for the common defense of the Republic and the individual liberty of its citizens; (C) To foster and promote the shooting sports and all lawful uses of arms; and, (D) To foster and promote awareness of, and public engagement in, all of the above.

5. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom.

6. FPC serves its members, supporters who have all the indicia of membership, and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

7. FPC also operates a Hotline, accessible by phone, email, and on the Internet, where FPC members and supporters, and members of the public, can submit

reports of, inter alia, violations of their rights and requests for information about how to comply with various firearm laws that apply to them.

8. FPC has members and supporters who reside in Pennsylvania, including in Philadelphia, and in other states.

9. In addition to Plaintiffs Fetsurka and Sieck, FPC has members and supporters who are law-abiding residents of Philadelphia, Pennsylvania who do not have a LTCF and do not fit one of the exemptions to the Commonwealth's and City's criminal laws prohibiting carry of firearms in public, but wish to carry loaded firearms in public for lawful purposes including self-defense, and would do so forthwith but for the challenged laws, policies, and enforcement practices.

10. FPC's law-abiding members and supporters in Philadelphia who do not have a LTCF but who wish to carry have been adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged in this action.

11. FPC represents the interests of all its members and supporters who, like Plaintiffs Fetsurka and Sieck, are completely prohibited, on pain of criminal punishment and permanent deprivation of Second Amendment rights, from carrying firearms in public in Philadelphia for lawful purposes including self-defense.

12. Because of Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein, including Defendants City of Philadelphia and Philadelphia Police Commissioner Danielle Outlaw's ("Philadelphia Defendants") closure of their Gun Permit Unit ("GPU"), FPC has suffered a diversion of organizational resources to identify and/or counteract the Defendants' unlawful actions, as well as a frustration of the organization's mission.

13. Many FPC members and supporters have contacted the organization and its Hotline because they have been unable to schedule an appointment to submit an application or obtain a LTCF from Philadelphia Defendants, and thus lawfully exercise their right to bear arms because they have twice closed their GPU, the enormous backlog of appointments rendering access to the GPU to submit an application impossible.

14. I have seen a photograph of a posted sign at Philadelphia Defendants's GPU calling its services "non-essential".

15. My understanding, based upon reports by FPC members and members of the public in and around Philadelphia, as well as my own review of their laws, policies, and enforcement practices, Philadelphia Defendants cause: 1) their GPU to have less staff, resources, and capabilities than necessary to timely provide constitutionally required services that are necessary to access and

exercise a fundamental, individual right; 2) their GPU to impose burdens far beyond what is required to determine if an applicant is "disqualified from exercising Second Amendment rights"; 3) their GPU to treat the GPU's firearm-related services dis-favorably compared to the Philadelphia Defendants' other services, thus making the right to keep and bear arms a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees" that is "singled out for special—and specially unfavorable—treatment"; and, 4) a denial of law-abiding Philadelphians' constitutional right and ability to carry loaded, operable firearms in public.

16. FPC is participating in this case on behalf of its members and supporters, including the named Plaintiffs, and similarly situated individuals.

17. Defendants' laws and orders, and their enforcement policies, orders, practices, customs, and actions challenged herein, have cause FPC to expend and divert resources to identify and/or counteract the Defendants' unlawful actions.

18. FPC has been and continues to be adversely and directly harmed, and has and continues to have its purposes and mission frustrated, because of Defendants' laws and orders, and their enforcement policies, orders, practices, customs, and actions challenged herein.

19. As a result of their laws, policies, and enforcement practices, and the Defendants' implementation of these orders and policies, FPC has incurred costs due to receiving, investigating, and responding to requests from its members, supporters, and the public.

20. All of these costs, such as expenditures of time and money, caused by Defendants' laws and policies, and their enforcement thereof, come at the expense of other priorities that FPC would otherwise pursue.

21. Since the Philadelphia Defendants' GPU closure on or about November 18, 2020, I have personally reviewed many recent public reports posted as comments to FPC's social media platforms, as well as FPC Hotline reports and requests for assistance, caused by Defendants' laws and policies, and enforcement thereof.

22. I am further aware that FPC Director of Legal Strategy, and attorney of record, Adam Kraut ("Mr. Kraut") has spoken with several FPC members and supporters in the City of Philadelphia who submitted FPC Hotline reports and requests for assistance that I have seen, and who are not named plaintiffs in this action but are affected by Defendants' laws and policies, and enforcement thereof, like FPC members and Plaintiffs Fetsurka and Sieck.

23. The following facts and circumstances were reported to FPC by some of its members and supporters in Philadelphia:

    a. On November 22, 2020, FPC member and supporter Robert R., who requested that we not disclose his full name *due to safety concerns*, reported that he is a resident of the City of Philadelphia and wanted to carry a handgun in public for self-defense but was being prevented from it because of Defendants' laws, policies, and enforcement practices. Mr. R reported that he had previously successfully contacted the Philadelphia Defendants' GPU after it reopened from its prior closure in July 2020, and was able to schedule an appointment for on or about September 10, 2020. Mr. R reported that, because he was told that he came in contact with a potentially COVID positive individual at work, he attempted to contact the Philadelphia Defendants' GPU multiple times to change his appointment as he could not go in-person to the scheduled appointment. Mr. R reported that he utilized both numbers on the Philadelphia Defendants' GPU's website but was unable to reach an individual to cancel or reschedule his appointment. Mr. R reported that he has also spoken to several personal friends who are sworn police officers employed by the Philadelphia Defendants' and was informed by them that GPU

appointments are now around one year into the future from whenever Philadelphia Defendants re-open their GPU. Mr. R reported that he is concerned for his safety and wishes to carry a firearm in public for self-defense. Mr. R reported that he is particularly concerned about robberies and assaults that prevalently occur in the area around where he lives and takes walks in Philadelphia.

b. On November 22, 2020, Mr. Lim reported that he is a resident of the City of Philadelphia and wanted to carry a handgun in public for self-defense but was being prevented from it because of Defendants' laws, policies, and enforcement practices. Mr. Lim reported that he had previously completed a paper LTCF application and attempted to bring it to the Philadelphia Defendants' GPU at some time in March or April 2020. Mr. Lim reported that he was unaware that the Philadelphia Defendants had closed their GPU prior to his arrival. Mr. Lim reported that he subsequently spoke to a friend who told him that he had an LTCF application appointment in August or September of 2020, making Mr. Lim aware of a substantial delay in being able to submit an application. Mr. Lim reported that he wished to mail his application to Philadelphia Defendants' GPU but could not under their policies and practices of requiring appointments and physical, in-

person hand delivery of LTCF applications. Mr. Lim reported that he was unaware that the GPU reopened in July, as they did not collect his name, phone, or email and attempt to reach him, and just saw on the news that the Philadelphia Defendants' had shut their GPU down again. Mr. Lim reported that there were two kids who were shot two blocks away from where he resides and that he is constantly alerted to shootings in the area. Mr. Lim also reported that rioters destroyed property nearby and have been known to harass people walking down the street. Mr. Lim further reported that his mother had been harassed in a threatening manner by individuals while attempting to get groceries. Mr. Lim is concerned about the safety of himself and his older parents and wishes to carry a firearm in public for self-defense.

24. If the Defendants' laws, orders, and enforcement policies, practices, and customs challenged in this case are not enjoined, based upon the current volume of FPC Hotline reports and requests and my years of experience with such matters, I expect that FPC will receive dozens, and potentially hundreds, of similar reports and requests for assistance in the coming weeks that FPC will necessarily have to review, investigate, and respond to.

25. If the Defendants' laws, orders, and enforcement policies, practices, and customs challenged in this case are not enjoined, additional harm will result

in the form of ongoing damages and irreparable harm to FPC and its members, and similarly situated members of the public.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my information, knowledge and belief.

Date: November 23, 2020

_____
Brandon Combs