**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH FETSURKA, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-5857** |
| | : | |
| **DANIELLE OUTLAW, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2020, upon consideration of the Defendants the City of Philadelphia and Commissioner Danielle Outlaw's Motion to Dismiss Plaintiffs' Amended Complaint, and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED**. It is further **ORDERED** that all claims against the City of Philadelphia and Commissioner Danielle Outlaw are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEITH FETSURKA, et al., | : | |
| Plaintiffs, | : | |
| | : | |
| | : | **Civil Action** |
| v. | : | **No. 20-5857** |
| | : | |
| DANIELLE OUTLAW, et al., | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Defendants, the City of Philadelphia ("City") and Commissioner Danielle Outlaw, hereby file this Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of this motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court dismiss the claims asserted against them in Plaintiffs' Amended Complaint, with prejudice.

Date: December 14, 2020                Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Diana P. Cortes, Acting City Solicitor

 /s/ Diana P. Cortes
By: Kristin K. Bray, Esq.
Chief Deputy City Solicitor, Code & Public Nuisance
Litigation
PA Bar No. 200737
(215) 683 – 5408 / kristin.bray@phila.gov
Shannon Zabel, Esq.
Assistant City Solicitor

PA Bar No. 321222
(215) 683-5113 / shannon.zabel@phila.gov
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19103-1595

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **KEITH FETSURKA, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-5857** |
| | : | |
| **DANIELLE OUTLAW, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A CLAIM**

Plaintiffs, Keith Fetsurka, Timothy Sieck, Nicolas Defina, Andrew Scott and the Firearms Policy Coalition, Inc., have sued the City of Philadelphia ("City") and Commissioner Danielle Outlaw under 42. U.S.C. § 1983 for allegedly violating their Second Amendment rights to keep and bear arms.  However, Plaintiffs lack standing to bring their claims, as they have failed to demonstrate an injury-in-fact.  Indeed, all Plaintiffs are able to apply for a license to carry firearms ("LTCF") and have it processed in a timely manner; in fact, three of the four individual Plaintiffs have already been approved for a LTCF.

Moreover, Plaintiffs fail to allege a cognizable Second Amendment claim because regulations more restrictive than the delays at issue here are longstanding and have been held presumptively constitutional regulations under Supreme Court and Third Circuit precedent. Additionally, the GPU's temporary closures and procedures for processing LTCF applications are reasonably related to the important City objective of reducing spread of COVID-19 and of complying with the City's obligations as an issuer of LTCFs under the state statute.  Finally, to the extent Plaintiffs are attempting to challenge portions of the Commonwealth's statute as

unconstitutional, such a claim necessarily fails against the City and Commissioner Outlaw. Accordingly, the Court should dismiss Plaintiffs' Amended Complaint against Defendants with prejudice.

## I.     STATEMENT OF ALLEGED FACTS

Plaintiffs, Keith Fetsurka, Timothy Sieck and the Firearms Policy Coalition, Inc., instituted the present federal action on November 20, 2020.  ECF Doc. 1, Complaint ("Cmplt.).  On November 30, 2020, Plaintiffs, Keith Fetsurka, Timothy Sieck, Nicolas Defina, Andrew Scott and the Firearms Policy Coalition, Inc. ("FPC"), filed an Amended Complaint against the City of Philadelphia, Philadelphia Police Commissioner Danielle Outlaw and Colonel Robert Evanchick, Commissioner of the Pennsylvania State Police.  ECF Doc. 16, Amended Complaint ("Am. Cmplt.").  Plaintiffs have sued the City of Philadelphia and Commissioner under 42 U.S.C. § 1983, alleging a violation of their civil rights under the Second and Fourteenth Amendments.  *Id.* at p. 63, Count I.  Plaintiffs seek declaratory and injunctive relief.  *Id.* at ¶ 32.

In the Commonwealth of Pennsylvania, and specifically in the City of Philadelphia, an individual must have a license to carry a firearm in public.  Carrying a firearm in public without such a license could expose an individual to criminal prosecution or civil penalties.  Am. Compl. ¶¶ 35-46.  Licensure is overseen by the county in which an individual resides.  *Id.* ¶ 45.  In Philadelphia, that process is overseen by the Philadelphia Police Department's Gun Permitting Unit ("GPU").  *Id.* ¶ 47.  In their pleadings, the Plaintiffs complain about a series of closures the GPU implemented to prevent the spread of COVID-19.  Initially, as a result of the pandemic, the GPU was temporarily closed from March until July 2020. *Id.* ¶ 95.  To comply with CDC protocols on physical distancing and density allowances of individuals within indoor spaces and so as to

5

reduce the risk of introduction and transmission of COVID-19, the GPU was re-opened at lower capacity.  *Id.* ¶¶ 72, 74-76, 96, 101.  The GPU was also temporarily closed on November 18, 2020 for a period of time until December 7, 2020, as a result of positive COVID-19 tests among GPU personnel.  *See id.* ¶ 97, 100.

In addition to the pandemic-related closures of the GPU, Plaintiffs complain that the licensure process overseen by Defendants is long and burdensome, imposing severe delays on the individuals seeking a LTCF in Philadelphia.  Am. Compl. ¶ 71, 107.  Plaintiffs allege that Defendants "do not provide individuals with an online or electronic means of scheduling an appointment," that appointments are scheduled months into the future, that applications are only accepted via in person appointments, that every applicant must be fingerprinted and subjected to an interview, and that the City generally treats the GPU services as "non-essential."  *Id.* at ¶¶ 69, 70, 74, 78, 83, 94-106.  Further, Plaintiffs state that Defendants "have refused to provide alternative means of accepting and processing LTCF applications" even though other counties throughout the Commonwealth offer these services.  *Id.* at ¶¶ 109, 114-117.  They aver that Defendants have "many" alternatives and "could, but do not:" accept and process LTCF applications without any in-person appointment; use online systems so that the public could schedule or reschedule GPU appointments; and use email to accept LTCF applications.  *Id.* at ¶¶ 120, 121, 123.

All individual Plaintiffs allege that they are eligible to carry firearms but have been unable to obtain a LTCF.  Am. Compl. ¶¶ 131-201. Plaintiff FPC is a 501(c)(4) non-profit organization, which alleges its members have been adversely and directly harmed by Defendants' actions inhibiting their Second Amendment rights.  *Id.* at ¶ 26.  Plaintiff Fetsurka was scheduled for an appointment to apply for a LTCF on November 19, 2020, but his appointment was canceled on November 18, 2020, when the GPU was temporarily closed due to a COVID-19 outbreak.  *Id.* at

¶ 149.  Plaintiffs Scott and Sieck admit that they did not submit a LTCF application to the GPU, as is required under the statute, accordingly there has been no reason for the GPU to schedule an appointment for either of them.  *Id.* at ¶¶ 164-65, 199-200.  Plaintiff Defina avers that he applied for a LTCF in April 2019 and has not yet received a response approving or denying his application. *Id.* at ¶¶ 177, 180.  He admits that he has not checked the status of his application pursuant to the GPU's procedures in the intervening one year and seven months.  *Id.* at ¶ 182.  Plaintiff Defina does not allege that he attempted to obtain an appointment for a LTCF at any time between March 2020 and present day.

*Law Applicable to Firearms Licensing in Pennsylvania*

Throughout Pennsylvania, a person who wishes to carry a firearm concealed on or about their person or in their vehicle must have a Pennsylvania License to Carry Firearms ("LTCF") pursuant to the Uniform Firearms Act (UFA), Act of December 6, 1972, P.L. 1482, *as amended*, 18 Pa. C.S. §§ 6101-6128.  *See* 18 Pa.C.S. § 6109.  Subsection (c) of Section 6109(c) of the UFA provides for a uniform application form for LTCFs and requires Sheriffs, or in the case of Philadelphia, the Chief of Police, to process applications and issue or refuse LTCFs.  18 Pa. C.S. § 6109(c).

In addition to the uniform application, Section 6109 of the UFA requires the Sherriff or Chief of Police to conduct a thorough investigation "not to exceed 45 days" before issuing or refusing the license to each applicant.  18 Pa.C.S. § 6109(e)(1).  Subsection (d) of Section 6109 of the UFA requires the Sheriff or Chief of Police to:

(1) investigate the applicant's record of criminal conviction;
(2) investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year;
(3) investigate whether the applicant's character and reputation are such that the applicant

7

will not be likely to act in a manner dangerous to public safety;

(4) investigate whether the applicant would be precluded from receiving a license under subsection (e)(1) or section 6105(h) (relating to persons not to possess, use, manufacture, control, sell or transfer firearms); and

(5) conduct a criminal background, juvenile delinquency and mental health check following the procedures set forth in section 6111 (relating to sale or transfer of firearms), receive a unique approval number for that inquiry and record the date and number on the application.

18 Pa. C.S. § 6109(d).

The Sheriff or Chief of Police is further charged with ensuring that LTCFs are <u>not</u> issued

to 14 categories of persons:

(i) An individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety.

(ii) An individual who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

(iii) An individual convicted of a crime enumerated in section 6105.

(iv) An individual who, within the past ten years, has been adjudicated delinquent for a crime enumerated in section 6105 or for an offense under The Controlled Substance, Drug, Device and Cosmetic Act.

(v) An individual who is not of sound mind or who has ever been committed to a mental institution.

(vi) An individual who is addicted to or is an unlawful user of marijuana or a stimulant, depressant or narcotic drug.

(vii) An individual who is a habitual drunkard.

(viii) An individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year except as provided for in section 6123 (relating to waiver of disability or pardons).

(ix) A resident of another state who does not possess a current license or permit or similar document to carry a firearm issued by that state if a license is provided for by the laws of that state, as published annually in the Federal Register by the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury under 18 U.S.C. § 921(a)(19) (relating to definitions).

(x) An alien who is illegally in the United States.

(xi) An individual who has been discharged from the armed forces of the United States under dishonorable conditions.

(xii) An individual who is a fugitive from justice. This subparagraph does not apply to an individual whose fugitive status is based upon nonmoving or moving summary offense under Title 75 (relating to vehicles).

(xiii) An individual who is otherwise prohibited from possessing, using, manufacturing, controlling, purchasing, selling or transferring a firearm as provided by section 6105.

(xiv) An individual who is prohibited from possessing or acquiring a firearm under the

statutes of the United States.

18 Pa.C.S. § 6109(e)(1).

The Sheriff or Chief of Police may not simply take the application at face value.  Section 6109 of the UFA specifically requires the Sheriff or Chief of Police to issue or refuse a license based upon its investigation and the "accuracy of the information contained in the application." 18 Pa.C.S. § 6109(g).

Defendants, the City of Philadelphia and Commissioner Outlaw, now move to dismiss the 42 U.S.C. § 1983 claims asserted against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction.  A motion to dismiss pursuant to Rule 12(b)(1) challenges the authority of a federal court to consider a case or claim. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) ("At issue in a Rule 12(b)(1) motion is the court's very power to hear the case." (internal quotations omitted)).  Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged.  *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.*  Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal

conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (citations and quotations omitted).

## III.   LEGAL ARGUMENT

Plaintiffs' Amended Complaint suffers from several deficiencies and should be dismissed with prejudice.  As a threshold matter, Plaintiffs lack standing to bring their § 1983 claims, as they can allege no deprivation of their Second Amendment right to keep or bear arms.  Plaintiffs are able to apply for a LTCF via email, a method they have alleged in their Amended Complaint is an appropriate means by which they should be allowed to apply for the LTCF.  Indeed, three of the four individual Plaintiffs (Fetsurka, Scott and Sieck) have already been approved for a LTCF and simply need to schedule a time to pick up the licenses.  Plaintiff DeFina provides no excuse for why he has yet to utilize the e-mail system that is available for making application for a LTCF.  Along those lines, three of the individual Plaintiffs, Scott, Sieck and Defina are unable to allege an injury-in-fact sufficient to create standing because they admittedly never attempted to apply for a LTCF during the COVID-19 pandemic.

The Amended Complaint further fails to state a claim upon which relief can be granted because Plaintiffs have not sufficiently alleged that their Second Amendment rights were violated by Defendants.  Additionally, to the extent Plaintiffs attack the constitutionality of portions of the UFA, such a claim necessarily fails against the City and Commissioner Outlaw, who have no personal involvement in the creation of the statute.  Accordingly, and as outlined more fully below, Plaintiffs' Amended Complaint should be dismissed against Defendants.

### A.  Plaintiffs Lack Standing to Bring Their Claim Under 42 U.S.C. § 1983.

"A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.

2007).  Under Article III of the United States Constitution, the power of the judiciary "extends only to 'cases' and 'controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The standing doctrine identifies what constitutes a "case" or "controversy." *Id.*

Here, Plaintiffs allege that City and Commissioner Outlaw have deprived them of their Second and Fourteenth Amendment rights "to keep and bear arms" because their "law, policies and enforcement practices prevent law abiding individuals not prohibited from possessing or acquiring firearms from carrying loaded, operable firearms on their person in public …"  Am. Cmplt. at ¶ 230.[1]  Specifically, Plaintiffs seek declaratory, preliminary and injunctive relief and allege that the individual Plaintiffs "desire to obtain a LTCF"; "meet all the eligibility requirements" under the state statute; and the individual Plaintiffs and Plaintiff FPC's members "wish to exercise" their right to bear arms." *Id.* at ¶¶ 255-57.

However, all Plaintiffs lack standing to bring their claim under 42 U.S.C. § 1983 in that there is no present case or controversy as it relates to an alleged deprivation of their Second Amendment rights.  To establish Article III standing, a plaintiff must establish the "irreducible constitutional minimum" of the following three elements: (1) injury-in-fact, meaning there is "an actual or imminent" and "concrete and particularized" harm to a "legally protected interest"; (2) causation, which requires the injury to be "fairly ... trace[able]" to the challenged action of the defendant; and (3) redressability, meaning that it must be "likely, as opposed to merely speculative," that a favorable decision by a court will redress the injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted) (alteration in original).  The plaintiff, as the party invoking federal

---

[1] Plaintiffs allege a Fourteenth Amendment violation in that the Second Amendment is applicable to the states through the Fourteenth Amendment.  *See* Am. Cmplt. at ¶¶ 224, 251, 252.

jurisdiction, bears the burden of establishing these elements.  *Spokeo, Inc.*, 136 S. Ct. at 1547.

When standing is contested, as it is here, "the injury-in-fact element is often determinative." *In re Schering Plough Corp.*, 678 F.3d at 245 (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir.2009)) (internal quotation marks omitted). To plead an injury-in-fact, the party invoking federal jurisdiction must establish three sub-elements: (1) the "invasion of a legally protected interest"; (2) that the injury is both "concrete and particularized"; and (3) that the injury is "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see also Mielo v. Steak 'n Shake Operations*, 897 F.3d 467, 479 n.11 (3d Cir. 2018).  The second sub-element requires that the injury "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. As for the third, when a plaintiff alleges future injury, such injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2).  Allegations of "possible" future injury simply are not enough. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Significantly, since December 7, 2020, all individual Plaintiffs and Plaintiff FPC's members have been able to apply for a LTCF with the PPD's GPU via email submission of their application.  Exhibit A, Declaration of Chief Inspector Vanore, at ¶¶ 7-20.  Plaintiffs are simply unable to articulate an "injury-in-fact" related to their constitutional rights that is "actual or imminent" in this matter.  Rather, their allegations in Count I rest largely upon the fact that the "GPU's closure" and "refusal to institute an online LTCF permitting system" resulted in the deprivation of their Second Amendment rights.  Am. Cmplt. at ¶ 263.  Yet neither of those alleged harms are present here – the GPU has been open and timely accepting applications via electronic submission since December 7, 2020.  Exhibit A at ¶¶ 7-20.  All individual Plaintiffs and members of Plaintiff FPC are able to apply for a LTCF online and have their application processed in a

timely fashion.

What is more, within the last week, three of the four individual Plaintiffs (Plaintiffs Fetsurka, Sieck and Scott) have successfully applied for a LTCF via an email application and their applications for a LTCF have been approved.  Plaintiff Scott's application was received on December 8, 2020 and the GPU sent an email informing him of his approval for a LTCF on December 11, 2020.  *Id.* at ¶ 21.  Plaintiff Sieck's application was received on December 9, 2020 and the GPU sent an email informing him of his approval for a LTCF on December 14.  *Id.* at ¶ 22.  Plaintiff Fetsurka's application was received on December 10, 2020 and the GPU sent an email informing him of his approval for a LTCF on December 14, 2020.  *Id.* at ¶ 23.  Inexplicably, plaintiff Defina has not yet applied for a LTCF utilizing the email application process.  *Id.* at ¶ 24.

Similarly, Plaintiffs have failed to establish the requisite causation or redressability prongs of the standing analysis.  Plaintiffs cannot plausibly allege that any deprivation of their Second Amendment rights is "fairly traceable" to Defendants' conduct as Defendants have made a process accessible to them to accept applications online and have them processed in a timely manner.  Likewise, under the redressability prong, the relief that Plaintiffs are seeking is currently available to them without the necessity of a court decision and indeed, three of the four individual Plaintiffs have been approved for a LTCF.  *See* Am. Cmplt. at p. 78-80, "Prayer for Relief" ¶ (a)-(e).

Further, to the extent Plaintiffs' Second Amendment claims are predicated upon the GPU's allegedly required documentation or information during the application process, Plaintiffs also lack standing to bring these causes of action.  Plaintiffs have alleged no harm or injury-in-fact from any of the requirements alleged in their Amended Complaint.  *See* Am. Cmplt.  ¶¶ 69-89.  They make general, conclusory complaints about the GPU requirements, but fail to state at any point how they were personally harmed by these requirements such that their Second Amendment rights

were violated.  For instance, individual Plaintiffs and the FPC Plaintiff provide no allegations that their applications were delayed as a result of the GPU's required documentation or information nor could they given that three of the four Plaintiffs' respective applications were approved within a matter of a few short days after receipt by the GPU.  Without alleging any injury-in-fact, Plaintiffs lack standing to pursue claims based upon the GPU's alleged requirements. Accordingly, the Court should dismiss Plaintiffs' Second Amendment claims in their entirety against Defendants.

### a. Plaintiffs Sieck, Scott and Defina Also Lack Standing Because They Never Applied for a LTCF During the Relevant Time Period.

Plaintiffs Sieck, Scott and Defina's claims should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because they had not applied for a LTCF with the GPU at any time from March 2020 to the filing of their Complaint.  In their Amended Complaint, Plaintiffs Sieck and Scott admit that they did not submit a LTCF application pursuant to the UFA.  Am. Compl. at ¶¶ 164-65, 199-200. Plaintiff Defina states that he applied for a LTCF in April 2019, but admits he has not checked the status of the application, pursuant to the GPU's procedures, in the intervening one year and seven months.  *Id.* at ¶¶ 177, 180, 182.  Plaintiff Defina does not allege that he attempted to obtain an appointment for a LTCF at any time between March 2020 and present day, nor does he allege that he was prevented from doing so.  Because Plaintiffs Seick, Scott and Defina did not apply for a LTCF during the relevant time period, there is no actual and concrete harm to a legally protected interest.  Their alleged injury is merely hypothetical. Plaintiffs' allegations of possible future injury simply are not enough.  Thus, for this additional reason, Plaintiffs Sieck, Scott and Defina lack standing and their claims must be dismissed.

**B.  Plaintiffs Fail to Allege a Second Amendment Violation.**

In their Amended Complaint, Plaintiffs argue that any delay in the processing of their applications for a license to carry a firearm constitutes an infringement upon their Second Amendment right to keep and bear arms.  *See* Am. Cmplt. at ¶¶ 11, 13, 84, 92, 107.  However, they fail to sufficiently allege a violation of their Second Amendment rights.  First, because restrictions on carrying of firearms in public are longstanding and presumptively constitutional regulations under Supreme Court and Third Circuit precedent, Plaintiffs cannot meet their threshold burden to establish that this temporary measure substantially burdens the rights of gun owners.  Second, even assuming it does, the closures and delays alleged here easily pass muster under intermediate scrutiny because they served the City's compelling safety interest in protecting the lives of its citizens from threat of a deadly, once in a lifetime pandemic. The latest temporary closure was reasonably related to protect this interest by keeping applicants out of proximity with one another and with GPU employees who have tested positive or been exposed to somebody who has.  Further, the documentation and information required by the GPU for a LTCF application are reasonably related to the City's significant interest in complying with the duties delegated to it under Section 6109 of the UFA.

Like most jurisdictions, the Third Circuit has adopted a two-step test for analyzing Second Amendment challenges.  Under this well-established test, the court must first "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee."  *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).  If the challenged law does not burden conduct that is protected by the Second Amendment, then there is no violation of the Second Amendment and the inquiry ends.  *Id.*

Second, if the challenged law burdens conduct that is protected by the Second Amendment, then the law is assessed under means-end scrutiny. *Marzzarella*, 614 F.3d at 89. If the law survives heightened scrutiny, then it is constitutional. *Id.* A law should be subject to intermediate scrutiny when it does not severely limit the possession of firearms. *Id.* at 97. In particular, intermediate scrutiny applies when the law or practice at issue, as here, does not burden the core Second Amendment protection of the right of law-abiding citizens "to possess non-dangerous weapons for self-defense in the home." *Ass'n of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney Gen. of New Jersey*, 974 F.3d 237, 242 (3d Cir. 2020) (quoting *Marzzarella*, 614 F.3d at 92). Under intermediate scrutiny, the challenged law must be reasonably related to an important state interest. *Marzzella*, 614 F.3d at 97-98.

The rapid processing of a firearms license application for public carrying during a public health emergency is not a right that is protected by the Second Amendment. The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. 2nd Amend. The core right protected by the Second Amendment is the right to keep and bear arms for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570 (2008) (stating that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home"); *see also Marzzarella*, 614 F.3d at 90 (3d Cir. 2010) ("The Court concluded the Second Amendment confer[s] an individual right to keep and bear arms, at least for the core purpose of allowing law-

abiding citizens to use arms in defense of hearth and home.") (quotations and citations omitted).[2]

In *Heller*, the Supreme Court explained that

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

554 U.S. at 626–27.  The Court identified this as a "non-exhaustive" list of "presumptively lawful

regulatory measures" that are not implicated by the Second Amendment.  *Id.* at 627 n.26.

In *Drake v. Filko*, the Third Circuit Court of Appeals held that a New Jersey requirement

that an individual applying for a license to carry a firearm (whether openly or concealed) in public

demonstrate a "justifiable need" for that license did not burden conduct within the scope of the

Second Amendment.  724 F.3d 426, 429-30 (3d Cir. 2013).  Under that statutory scheme, an

applicant had to demonstrate first to the local police chief and then to a judge that the applicant

had an "urgent need for self-protection, as evidenced by specific threats or previous attacks which

demonstrate a special danger to the applicant's life that cannot be avoided by means other than by

issuance of a permit to carry a handgun."  *Id.* at 428-29 (quoting N.J. Admin. Code 13:54-

2.4(d)(1)).  The Third Circuit Court held that New Jersey's license to carry law, similar to laws in

other jurisdictions restricting and regulating public carrying of firearms, was a "presumptively

lawful, longstanding licensing provision under the teachings of *Helle*r and *Marzzarella*."  *Drake

v. Filko*, 724 F.3d 426, 432 (3d Cir. 2013).  The licensure time delay alleged and challenged by

Plaintiffs is certainly less onerous than the factual predicate required for a license that was found

---

[2] The question of whether the individual right to bear arms for the purpose of self-defense extends beyond the home is unsettled and need not be addressed for this Court to conclude that Plaintiffs are unable to allege a Second Amendment claim.  *See Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013).

not to offend the Second Amendment in *Filko*.   Consequently, Plaintiffs cannot establish this threshold element of their Second Amendment claim.

Even if the Court were to undertake an intermediate scrutiny analysis (which it need not), the temporary closure of the GPU easily survives such review.  The City has an important interest in ensuring that its public-facing offices do not contribute to the spread of COVID-19.   The imposed limitations on interpersonal contact, particularly where employees of the GPU tested positive, further a substantial government interest of reducing community transmission of COVID-19.

The City also has an important government interest in ensuring that it only issues LTCF licenses to those persons that are permitted to have them under the Pennsylvania Uniform Firearms Act.  The City's role under Section 6109 goes far beyond rubber stamping LTCF applications. The City must investigate the accuracy of the information provided in the state-mandated LTCF application and must <u>not</u> issue LTCFs to the fourteen categories of persons enumerated in Section 6109(e)(1).  The City has an important government interest in fulfilling its duties under Section 6109.

Intermediate scrutiny requires the asserted governmental end to be more than just legitimate, either "significant," "substantial," or "important" and that the fit between the challenged regulation and the asserted objective be reasonable, not perfect. *See, e.g., Turner Broad. Sys. v. F.C.C.*, 512 U.S. 622, 662 (1994); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001).  The regulation need not be the least restrictive means of serving the interest. S*ee, e.g., Turner Broad. Sys.*, 512 U.S. at 662.

Here, the City's temporary shutdown of the GPU in response to GPU personnel testing positive for COVID-19 is reasonably related to the important government interest of preservation

of human life in a pandemic. In addition, the City's procedures for processing LTCFs are reasonably related to the important City interest of complying with the duties delegated to the City under Section 6109 of the UFA. It is reasonable, for instance, for the City to require applicants to provide a copy of their valid PA Driver's License or Official PA Photo Identification Card and proof of residence to verify that they are who they say they are in their written application. It is likewise reasonable for the City to require former military applicants to submit a copy of their DD-214 and naturalized citizen applicants to submit a copy of U.S. Passport or Naturalization Papers to ensure compliance with Section 6109(e)(1).[3] It is also reasonable for the City to retain discretion, in certain exceptional circumstances, to further investigate individuals by requiring additional paperwork, an interview or fingerprinting of the applicant in order to ensure it is fulfilling its statutory duties under Section 6109.

Plaintiffs offer little to no explanation, in their eighty-one page Amended Complaint, regarding how or why having to provide this de minimis information (such as a PA driver's license) substantially burdens their Second Amendment rights. They list GPU's alleged requirements generally and then rely solely on the conclusory allegation that all GPU requirements "are designed to, and do, chill, severely burden, delay and deny applications for LTCFs." Am. Cmplt. at ¶ 84. Yet Plaintiffs never allege that they were personally harmed by such requirements or offer an explanation as to how the requirements infringed upon their rights in applying for a LTCF. This is simply not sufficient to establish a Second Amendment violation.

---

[3] Section 6109(e)(1) prohibits the issuance of LTCFs to fourteen categories of people, including "[a]n alien who is illegally in the United States" and "[a]n individual who has been discharged from the armed forces of the United States under dishonorable conditions." 18 Pa.C.S. § 6109(e)(1).

In sum, Plaintiffs are unable to adequately allege a violation of their Second Amendment rights because: (1) regulations more restrictive than the delays at issue here are longstanding and have been held to fall outside the scope of the Second Amendment's protections; and (2) the GPU's temporary closures and procedures for processing LTCF applications are reasonably related to the important City objective of reducing spread of COVID-19 and of complying with the City's obligations as an issuer of LTCFs under the UFA.  Plaintiffs' Amended Complaint should thus be dismissed in its entirety.

### C.  To the Extent Plaintiffs Assert a Facial Challenge to the State Statute, They Have Failed to State a Claim Against the City and Commissioner Outlaw.

Additionally, to the extent Plaintiffs are attempting to challenge the constitutionality of portions of the UFA, such a claim necessarily fails against the City and Commissioner Outlaw.  In Count I, Plaintiffs allege that Defendant Colonel Evanchick "has and continues to enforce the Commonwealth's laws pertaining to the keeping and bearing of firearms, including 18 Pa. C.S. §§ 6106 – 6109", which results in their alleged inability to: "lawfully carry a loaded firearm on their person and in their motor vehicles, in public, for lawful purposes including self-defense" and "apply for a LTCF in another county." Am. Cmplt. at ¶¶ 237-39.  Plaintiffs further allege that the Philadelphia Defendants continue to enforce the state statute, which infringes on their Second Amendment rights.  *Id.* at ¶ 241.

To the extent Plaintiffs are attempting to plead such a claim against the City and Commissioner Outlaw, it necessarily fails as a matter of law.  A plaintiff cannot sustain a § 1983 claim without averring the existence of personal involvement.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  This rule requires a complaint to include "allegations of personal direction or of actual knowledge and acquiescence," and such allegations "must be made with

appropriate particularity." *Id.*   Here, it is undisputed that the City and Commissioner Outlaw have no role or personal involvement in the creation of the Commonwealth's statutes.   Rather, Defendants are bound by state statute to enforce the laws of the Commonwealth, unless and until those laws change.   Plaintiffs cannot sustain a § 1983 claim against the City and Commissioner Outlaw challenging the constitutionality of a state statute that they had no personal involvement in enacting.

Furthermore, a state court has already held that the limitations imposed under Section 6109 of the UFA do not infringe upon an individual's right to bear arms.   In *Caba v. Weaknecht*, 64 A.3d 39 (Pa. Commw. Ct. 2013), the Pennsylvania Commonwealth Court affirmed Section 6109's limitation that "those likely to act in a manner dangerous to public safety" are prohibited from obtaining a gun permit in Pennsylvania.   *Id.* at 52-53.   Plaintiff had specifically challenged the constitutionality of Section 6109 on its face.   *Id.*   The Court rejected the plaintiff's plea "to rule that Section 6109 of the Act unconstitutionally infringes on his federal and state right to bear arms."   *Id.*   Thus, to extent Plaintiffs are attempting to collaterally attack the constitutionality of the state statute, a state court has already held the Act's limitations on who can obtain a gun permit in Pennsylvania are constitutional.   For this additional reason, any claim challenging the UFA's constitutionality against Defendants should be dismissed with prejudice.

## IV.   CONCLUSION

Plaintiffs lack standing to bring a § 1983 claim against Defendants alleging that they have been deprived of their Second Amendment rights to keep and bear arms.   Plaintiffs cannot demonstrate a real and present controversy in this matter, as they have failed to establish injury-in-fact, causation or redressability.   Furthermore, Plaintiffs have failed to set forth sufficient

allegations to support their Second Amendment claim and any challenge to the Commonwealth's

statute fails against the City of Philadelphia and Commissioner Outlaw.  For the reasons set forth

above, the City of Philadelphia and Commissioner Outlaw respectfully request that this Court grant

the instant motion and dismiss Plaintiffs' Amended Complaint against them with prejudice.

Date:  December 14, 2020                    Respectfully submitted,


                                         CITY OF PHILADELPHIA LAW DEPARTMENT
                                         Diana P. Cortes, Acting City Solicitor


                                          */s/ Diana P. Cortes*
                                         By: Kristin K. Bray, Esq.
                                         Chief Deputy City Solicitor, Code & Public Nuisance
                                         Litigation
                                         PA Bar No. 200737
                                         (215) 683 – 5408 / kristin.bray@phila.gov
                                         Shannon Zabel, Esq.
                                         Assistant City Solicitor
                                         PA Bar No. 321222
                                         (215) 683-5113 / shannon.zabel@phila.gov
                                         City of Philadelphia Law Department
                                         1515 Arch Street, 15th Floor
                                         Philadelphia, PA 19103-1595

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KEITH FETSURKA, et al., | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| v. | : | **No. 20-5857** |
| | : | |
| DANIELLE OUTLAW, et al., | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, was filed via the Court's electronic filing system and is available for viewing and downloading by all parties of record.

Date:  December 14, 2020          Respectfully submitted,


CITY OF PHILADELPHIA LAW DEPARTMENT
Diana P. Cortes, Acting City Solicitor

 _/s/ Diana P. Cortes_____
By: Kristin K. Bray, Esq.
Chief Deputy City Solicitor, Code & Public Nuisance Litigation
PA Bar No. 200737
(215) 683 – 5408 / kristin.bray@phila.gov
Shannon Zabel, Esq.
Assistant City Solicitor
PA Bar No. 321222
(215) 683-5114 / shannon.zabel@phila.gov
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19103-1595