IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEITH FETSURKA, TIMOTHY SIECK, NICOLAS DEFINA, ANDREW SCOTT,** and **FIREARMS POLICY COALITION, INC.**<br><br>v.<br><br>**DANIELLE OUTLAW,** *Philadelphia Police Commissioner,* **CITY OF PHILADELPHIA, PENNSYLVANIA,** and **COLONEL ROBERT EVANCHICK,** *Commissioner of Pennsylvania State Police* | **CIVIL ACTION**<br><br>**NO. 20-5857** |

**MEMORANDUM ORDER RE: MOTIONS TO DISMISS**

**I. Introduction**

Plaintiffs Keith Fetsurka, Timothy Sieck, Nicolas Defina, Andrew Scott and the Firearms Policy Coalition, Inc. (FPC) filed an Amended Complaint against the City of Philadelphia, the Philadelphia Police Commissioner (Danielle Outlaw), and the Commissioner of the Pennsylvania State Police (Colonel Robert Evanchick) alleging a violation of Plaintiffs' civil rights under the Second and Fourteenth Amendment. (ECF 16). Both Defendants moved to dismiss the Amended Complaint. The Court will deny both motions.

**II. Procedural History**

Plaintiffs filed their initial Complaint on November 20, 2020; ten days later, they filed their Amended Complaint, which significantly broadened the claims they raised against Defendants. (ECF 16).

On November 23, Plaintiffs also filed a Motion for Preliminary Injunction which was continued by consent for several months, as the parties attempted to negotiate some type of settlement under the supervision of Judge Strawbridge. (ECF 8). It appeared that there were a

1

number of delays in attempting to reach an agreement, and the Court convened a telephone conference with counsel where the Court indicated a strong preference, in view of the delays, to proceed to a final hearing and set forth a short period to complete discovery, certain pretrial filings, and a non-jury trial beginning April 19, 2021. (ECF 49).

### III. Plaintiff's Amended Complaint

Plaintiffs' Amended Complaint makes the following factual allegations. As it must, the Court will "accept all factual allegations . . . as true and draw all reasonable inferences in favor of the plaintiff." N.J. Carpenters v. Tishman Constr. Corp., 760 F.3d 297, 302 (3d Cir. 2014).

Carrying a firearm in public in Philadelphia without a license can expose the carrier to criminal or civil liability. (Am. Compl. 3, ¶¶ 3, 9, ECF 16). The Philadelphia Police Department's Gun Permitting Unit (GPU) oversees the issuing of licenses for Philadelphia. (Id. at 5–6, 20, ¶¶ 9–11, 66–67). The State Police create the form used in the permitting process and operate the database used for an applicant's background check. (Id. at 24, ¶ 87).

Due to COVID-19, the GPU was temporarily closed from March to July 2020. (Id. at 30, ¶ 95). It was then re-opened at a lower capacity to comply with CDC protocols for physical distancing. (Id. at 30–25, ¶¶ 96, 98, 101). From November 18, 2020 to December 7, 2020, the GPU was closed again because of positive COVID-19 tests among GPU staff. (Id. at 33, ¶ 100).

In addition to their arguments against these COVID-related closures, Plaintiffs also argue that the overall licensing process is delayed and burdensome. (Id. at 36–41, ¶¶ 106–29). For example, they complain that Defendants do not provide online/email scheduling for licensing appointments, and that the City treats GPU services as "non-essential." (Id. at 40, ¶¶ 121, 123; 74, ¶ 263). The individual Plaintiffs allege that they are eligible to carry a firearm, but have been

2

unable to obtain a license due to the COVID-19 closures and delays. (Id. at 66, ¶ 234; 76, ¶ 274). Nonprofit Plaintiff alleges its members have been similarly aggrieved. (Id. at 3, ¶ 2; 8, ¶ 19).

## III.  Defendants' Motion to Dismiss

Both Defendants ("the City" and the "State Police") have filed Motions to Dismiss.

### 1. The City of Philadelphia's Motion to Dismiss (ECF 29)

The City makes three arguments in its Motion.

### A.  Plaintiffs lack standing.

The City argues that Plaintiffs have not alleged an injury-in-fact, because all individual Plaintiffs and FPC members have been able to apply for a LTCF since December 7, 2020, via the GPU's email submission system. (Mot. to Dismiss at 12, ECF 29). It notes that three of the four individual Plaintiffs (Fetsurka, Sieck, and Scott) have applied for a LTCF via email, and that their applications were approved. (Id. at 13). Plaintiff Defina has not applied for an LTCF via the email process. (Id.) To the extent Plaintiffs claim the GPU's documentation requirements violate the Second Amendment, the City argues that these are general, conclusory complaints, that do not describe any personalized harm. (Id. at 13–14).

The City also argues that Plaintiffs cannot meet the causation or redressability prongs of the standing analysis, because Defendants have made an application process available to them and have processed them in a timely fashion. (Id. at 13). Moreover, the relief Plaintiffs seek is available to them without the presence of a court decision. (Id.)

Lastly, the City notes that Plaintiffs Sick, Scott, and Defina's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because they did not apply for an LTCF at any time from March 2020 to the filing of the Complaint. (Id. at 14). The City characterizes any alleged injury they raise as "merely hypothetical." (Id.)

3

### B.  Plaintiffs fail to allege a Second Amendment violation.

According to the City, the rapid processing of a firearms license application for public carrying during a public health emergency is not a right protected under the Second Amendment. (Id. at 16).  Additionally, "restrictions on carrying of firearms in public are longstanding and presumptively constitutional" under Supreme Court and Third Circuit precedent.  (Id. at 15). Therefore, according to the City, Plaintiffs cannot establish that the rights of gun owners are substantially burdened.  (Id.)

Even assuming Plaintiffs' rights are burdened, the City argues that the closures/delays at the GPU easily pass intermediate scrutiny because they served a compelling interest in protecting citizens from the pandemic.  (Id.)  Additionally, the documentation required for a LTCF application is reasonably related to the City's significant interest in complying with the duties it has under Section 1609 of the Pennsylvania Uniform Firearms Act.  (Id.)

The City cites Drake v. Filko, 724 F.3d 426 (3d Cir. 2013) to make the point that if the Third Circuit allows New Jersey to require that individuals show an "urgent need for self-protection . . . to carry a handgun," then the City of Philadelphia can impose the time delay alleged here, because it is less onerous than Drake's factual predicate.  The City cites no further case law more factually on point.  (Id. at 17–18).

### C. To the extent Plaintiffs challenge the Pennsylvania state statute, they fail to state a claim against the City and Commissioner Outlaw.

Finally, the city argues that a § 1983 claim against the City and Commissioner Outlaw cannot stand because those Defendants had no personal involvement in enacting the state laws pertaining to the keeping and bearing of firearms.  (Id. at 20–21).  Moreover, the City notes that

4

the Pennsylvania Commonwealth Court has already affirmed state law placing limitations on gun permits as constitutional. (Id. at 21).

**2. The State Police's Motion to Dismiss (ECF 46)**

The State Police make four main arguments in support of dismissing Plaintiffs' Amended Complaint.

A. Plaintiffs do not state a justiciable claim.

The State Police argue that Plaintiffs have not raised a justiciable claim because there is no causal nexus between the alleged constitutional injury and the State Police, and because no injunction against the State Police could redress the harm Plaintiffs allege. (State Police's Mot. to Dismiss 9, ECF 46). Specifically, the State Police argue that Plaintiffs have not shown why the Police are responsible for infringing on their alleged right to a LTCF or how an injunction against the Police would remedy their failure to receive a LTCF. (Id. at 11).

Further, the State Police characterize Plaintiffs' desired remedy as "de facto immunity from otherwise constitutional state firearm licensing laws," and explain that that remedy has no connection to any harm that might have resulted from the GPU's delayed operations. (Id. at 2, 11).

Lastly, the Police note that three of the four Plaintiffs (Fetsurka, Sieck, and Scott) do not have a ripe claim because they have not actually been denied the opportunity to seek a LTCF application. (Id. at 12) In other words, their claims rely on speculation about what might happen rather than what has happened. (Id.)

B.  The Court should not exercise jurisdiction because Plaintiffs have available and adequate state law remedies.

The State Police note that state law provides an adequate remedy here. (Id. at 13)  Citing the Pullman[1] and Burford[2] abstention doctrines, they argue that Plaintiffs have ignored available state procedures to remedy their alleged harm, and that therefore the Court should abstain from deciding the complicated constitutional matter before it.  (Id. at 13–14).

C.  Plaintiffs fail to state a Second Amendment violation.

As a threshold matter, the State Police argue that Plaintiffs' claim against Col. Evanchick, in his official capacity, fails under § 1983, because it does not argue that he has deprived them of any rights, privileges, or immunities of federal law.  (Id. at 16–17).  They characterize Plaintiffs' claim as arguing that "if they cannot promptly obtain an LTC[F] from the City, they should be immune from the 'restrictions, criminal sanctions, and penalties' of these otherwise constitutional statutes."  (Id. at 16).  The State Police contend that this "is not how Section 1983 works," because Plaintiffs are not arguing that Col. Evanchick violated Plaintiffs' civil rights.  (Id.)

---

[1] The State Police write that "Pullman abstention is appropriate where (1) uncertain issues of state law underlie the federal constitutional claim; (2) state law issues subject to state court interpretation could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim; and (3) an erroneous construction of state law by the federal court would disrupt important state policies. Presbytery of New Jersey of the Orthodox Presbyterian Church v. Whitman, 99 F.3d 101, 106 (3d Cir. 1996)." (Id. at 13).

[2] The State Police explain that "Burford abstention is appropriate when 'timely and adequate state-court review is available' and '(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' Chiropractic Am., 180 F.3d at 104 (quoting New Orleans Public Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989)) (additional citations and internal quotation marks omitted)." (Id. at 14).

Second, the Police cite the Third Circuit decision in Drake v. Filko, 724 F.3d 426 (3d Cir. 2013) for the propositions that our Circuit has (1) declined to find a Second Amendment right outside the home; (2) found that gun licensing requirements do not implicate any constitutional right; and (3) held that the similar requirements of New Jersey are constitutional.  Accordingly, they argue that Plaintiffs have failed to state a claim.  (Id. at 17–19).

Even if there is a Second Amendment right at issue, the State Police argue that any restriction on it passes intermediate scrutiny.  (Id. at 20).  As an initial matter, the Police note the government's interest in safety that justifies having licensing requirements in general; the Third Circuit and Pennsylvania courts have made this clear.  (Id. at 21).  Next, the State Police contend that Plaintiffs do not allege that COVID-19 has slowed down or affected their role in licensing. Even assuming the Police were responsible for slowdowns, the Supreme Court has described curbing the spread of COVID-19 as a compelling interest.  (Id. at 22 (citing Roman Catholic Diocese of Brooklyn v. Cuomo, 136 S. Ct. 63, 67 (2020))).  And, they argue, Plaintiffs have alleged nothing specific to the State Police that signifies anything more than reasonably necessary has been done in response to COVID.  (Id. at 22).

D.  Plaintiffs' proposed remedy is overbroad.

The Police's final argument is that Plaintiffs' proposed remedy requiring the inclusion of the State Police is "dramatically overbroad."  (Id. at 3, 23).  They argue that if the Court ordered the City to reopen the GPU and process applications per Plaintiffs' demands, that Plaintiffs would have their desired relief without any injection involving the State Police.  (Id. at 23).  Accordingly, the Police argue that the only reason to include them in the scope of injunctive relief is because they may enforce Pennsylvania state law against Plaintiffs; an injunction targeting this

enforcement would create an entire class of individuals immune from gun-licensing laws, and create a risk to the public. (Id. at 23–24).

## IV. Analysis

Because the parties had delayed a hearing on the motion for a preliminary injunction, the Court's order urged the parties to move toward a final hearing which is now scheduled for April 19, 2021. A short period has been allowed for discovery, which is proceeding, as far as the Court knows, without any legal issues. (ECF 49).

The Plaintiffs responded to the Motions to Dismiss. (ECF 43, 48). They make a number of arguments reinforcing many of the points in the Amended Complaint. In no particular order, the Court briefly summarizes the Plaintiffs' contentions as follows. The Plaintiffs assert that the City has been unduly delaying applications for firearms licenses such that there is an infringement on applicants' constitutional rights under the Second Amendment and Fourteenth Amendment. (Resps. in Opp'n 13, 19, 21, 22, ECF 43; 19–20, ECF 48). The City has failed to allow the process to be accomplished by online methods, which would be more efficient and lead to more speedy granting of meritorious applications. (Resp. in Opp'n 4, ECF 43). In general, the City's GPU office has been understaffed, which has caused unnecessary delay in processing applications. (Resp. in Opp'n 3, 8, 9, 14, 21, ECF 43)

Because the State Police "actively enforce[]" this scheme, Plaintiffs deem them culpable as well. (Resp. in Opp'n 3, 12–13, ECF 48). Plaintiffs rebuff the State Police's suggestion that state law would provide an adequate remedy, noting that the Commonwealth's statutory scheme does not contemplate any mechanism for relief from a "categorical preclusion of access" to obtaining an LTCF. (Id. at 16–17).

The Plaintiffs also assert that they meet the constitutional standards for Article III standing, that their claims are ripe for review, and that they have been denied due process. (Resps. in Opp'n 13–17, 18–19, ECF 43; 10–16, ECF 48). They rely heavily on the leading Supreme Court case, District of Columbia v. Heller, 554 U.S. 570 (2008), and the more recent case involving the limitations on attendance at religious services in light of the pandemic, Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020).

After the briefing was completed, the Court convened a telephone conference of counsel and determined, in light of the continuances in the Motion for Preliminary Injunction that have taken place, over a period of about four weeks, that the most appropriate and effective way for the parties and the Court to explore the important issues raised by the Plaintiffs would be to have a final hearing. Therefore, the Court entered a scheduling order, and a non-jury trial on the merits of the claim is scheduled to begin on April 19, 2021.

## V.  Conclusion

The Court will not attempt to analyze or resolve the significant issues raised by both parties in the briefing on the Rule 12 Motion. The Court believes that an evidentiary hearing should take place to explore the issues with direct and cross-examination, followed by briefing on the merits.

For these reasons, the Defendants' Rule 12 Motions will be **DENIED** without prejudice.

BY THIS COURT:

s/ Michael M. Baylson

**Dated:  February 4, 2021**

_____
**MICHAEL M. BAYLSON**
**United States District Court Judge**

O:\CIVIL 20\20-5857 Fetsurka v Outlaw\20cv5857 memorandum order re MTD 02042021.docx